UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ISAIAH BRIDGES,

                                    Petitioner,

                  -against-

WILLIAM D. LEE, Superintendent,
 Eastern Correctional Facility,

                                    Respondent.
--------------------------------------------------------X

                                    **REPORT AND**
                                    **RECOMMENDATION**
                                    15 CV 4669 (MKB) (CLP)

**POLLAK**, United States Magistrate Judge:

On August 6, 2015, petitioner Isaiah Bridges, proceeding pro se, filed this Petition for a

writ of habeas corpus, pursuant to 28 U.S.C. § 2254, raising three claims.  (Pet.[1]).  On June 20,

2019, the Petition was referred to the undersigned to prepare a Report and Recommendation.

For the reasons set forth below, the Court respectfully recommends that the Petition be

denied in its entirety.

## FACTUAL BACKGROUND

The charges in this case stem from the sexual assault and robbery of Lisa Ciena ("Ciena")

on December 26, 2008.  The facts set forth below are derived from the testimony presented

during petitioner's trial, which commenced on October 25, 2010, in Kings County Supreme

Court.

A.  Lisa Ciena's Testimony

At trial, Ciena testified that on December 26, 2008, she made a trip to the grocery store

---

[1] Citations to "Pet." refer to the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas
Corpus by a Person in State Custody, filed on August 6, 2015, ECF No. 1.  The pages referred to
in the Petition reflect the "Additional Pages" attached to the Petition.

and bagel shop. (Tr.[2] at 87). Upon returning to her fiancé's residence at 2207 West Street, she placed her groceries and breakfast on the table and turned to find petitioner standing inside of the apartment. (Id. at 89). Ciena testified that she began to scream, and petitioner told her to "shut up" and pushed her to the side. (Id. at 90). Then, petitioner dragged her into the living room, told her to take off her shirt, and told her to perform oral sex on him. (Id.) Ciena testified that she complied because she was fearful for her life. (Id.) After petitioner ejaculated in her mouth, he ordered her to swallow it. (Id. at 91).

Next, Ciena testified that petitioner took her into the bedroom, told her to take off all her clothes, and asked if Ciena had any condoms. (Id. at 91-92). When Ciena answered no, he inserted his penis in to her mouth and told her to swallow his ejaculation again. (Id. at 92). Ciena testified that petitioner saw her fiancé's handcuffs on the bureau and "he started getting nervous." (Id. at 93). At this point, Ciena's dog began barking, and she told petitioner she needed to take it outside. (Id. at 94). Ciena testified that petitioner took the battery from a cell phone and twenty dollars out of her jacket pocket before they walked outside. (Id. at 94-95). Petitioner instructed Ciena to walk out of the house like they were friends and to not make eye contact with anybody. (Id. at 95).

Ciena testified that on this walk, petitioner started apologizing to her and told her he was from Texas, and at some point told her she could go. (Id. at 97-98). Ciena then ran to the corner deli and called 911 and her fiancé. (Id. at 98). She later received medical treatment at Coney Island Hospital. (Id. at 98-99).

---

[2] Citations to "Tr." refer to the transcript of the trial proceedings before the state court, commencing on October 25, 2010, contained within the State Court Record, ECF No. 5.

B. <u>Petitioner Isaiah Bridges' Testimony</u>

At trial, petitioner testified that on December 26, 2008, he was jogging down West Street when he saw Ciena carrying groceries and a newspaper under her arm. (<u>Id.</u> at 360). Petitioner testified they walked back to Ciena's apartment, and she invited him inside. (<u>Id.</u> at 361-62). According to petitioner, Ciena told him to take a seat in the living room, and she sat down next to him. (<u>Id.</u> at 362). Petitioner testified that Ciena told him she "liked big black men," and began to rub his inner thigh. (<u>Id.</u> at 363). Then Ciena began to perform oral sex on petitioner. (<u>Id.</u>)

Petitioner testified he ejaculated in her mouth, and then Ciena led him into the bedroom. (<u>Id.</u> at 364). Ciena then showed petitioner a safe with X-rated DVD's and asked if he would like to watch. (<u>Id.</u> at 365). After petitioner said no, Ciena took off her clothes and laid face down on the bed. (<u>Id.</u>) Petitioner testified Ciena performed oral sex on him again and he ejaculated in her mouth. (<u>Id.</u> at 366).

Next, petitioner saw a pair of handcuffs on the dresser, and Ciena explained those belonged to her boyfriend who is a cop. (<u>Id.</u> at 366-67). Petitioner asked Ciena if they were going to meet again, and Ciena said yes and asked him to put his number in her cellphone. (<u>Id.</u> at 367). After that, Ciena and petitioner noticed there was dog feces on the floor, and they proceeded to exit the house to walk the dog. (<u>Id.</u> at 368). After walking a few blocks, the two parted ways. (<u>Id.</u> at 370). Petitioner testified that he did not take anything from Ciena's apartment. (<u>Id.</u> at 370-71).

C. <u>Additional Testimony</u>

In addition to the complainant's and petitioner's testimony, several other witnesses were called at trial. Ciena's fiancé Christopher Haber testified about the phone call he received from

Ciena after the incident, as well as his observations of the condition of his apartment where the incident occurred. (See id. at 41-72). Haber testified that Ciena was "frantic" and "crying as she was talking." (Id. at 47). He further testified that when he went to the apartment, he noticed that there was dog poop on the floor, that a chair was broken, and the "table was out of place." (Id. at 49). Jay Hung, the owner of the grocery store where Ciena asked to use the phone, testified about the phone calls Ciena made to 911 and to Christopher Haber after the incident. (See id. at 76-81). Hung testified that Ciena was crying outside the grocery store, and that she asked Hung for help and to call 911 for her. (Id. at 78-79).

Sergeant Joseph Rosso testified that he responded to Ciena's 911 call. (Id. at 169). He testified that when he arrived at the grocery store, Ciena was very upset and she indicated she had been sexually assaulted. (Id. at 171). Sergeant Rosso then went back to the apartment where Ciena indicated the assault had taken place and he secured the premises. (Id. at 172-74). Detective Wendy Enos testified that she performed various crime scene duties on the evening of the incident, including photographing and sketching the apartment, taking measurements, and collecting any evidence relevant to the case, including fingerprints. (Id. at 224, 230).

Marie Longo, a registered nurse and director of the sexual assault program at Coney Island Hospital, testified that she performed a sexual assault kit on Ciena on December 26, 2008. (Id. at 322). Longo found a bruise on Ciena's leg as well as chapped lips consistent with an oral assault. (Id. at 333-34).

Detective Jarret Brown testified that on the day of the incident, he was assigned to conduct an interview of Ciena at Coney Island Hospital. (Id. at 196). Detective Brown then took Ciena back to her apartment so that she could show him exactly how the events of the assault occurred. (Id. at 197). On December 28, 2008, two days after the incident, Detective Brown

4

also received information that the fingerprints taken from the apartment matched petitioner's fingerprints, which were on file in the New York State and New York City databases. (Id. at 200, 303). The following day, December 29, 2008, Detective Brown arrested petitioner and brought him in for a lineup where Ciena identified petitioner as the person who assaulted her. (Id. at 203-05).

Police Officer Desimone testified that he picked up the sexual assault evidence kit from Coney Island Hospital and assigned it a voucher number on the day of the incident. (Id. at 185-87). Ewelina Bajda, a criminalist at the Office of the Chief Medical Examiner, testified that her office examined and tested the sexual assault evidence kit taken from Ciena at Coney Island Hospital, which included Ciena's sweatshirt and pants. (Id. at 276-79). Bajda found that the known DNA sample from petitioner and the DNA taken from the semen on Ciena's sweatshirt and pants were a match. (Id. at 286).

Detective Arthur Connolly, a member of the Latent Print Unit of the New York City Police Department, testified that he received latent fingerprints from the scene of the incident from Detective Enos. (Id. at 298, 301). Detective Connolly testified that the latent fingerprints from the crime scene matched petitioner's fingerprints. (Id. at 305).

Detective Shaun Winter testified that he received a cell phone without its battery in connection with this case. (Id. at 188-194). However, upon forensic search, he determined that no contact numbers were saved, and no phone calls had ever been made on the phone. (Id.)

## PROCEDURAL BACKGROUND

A. The Indictment

Following his arrest, petitioner was indicted in Kings County and charged with two counts of Criminal Sexual Act in the First Degree, in violation of New York Penal Law §

130.50[1], three counts of Sexual Abuse in the First Degree, in violation of New York Penal Law § 130.65[1], two counts of Sexual Misconduct, in violation of New York Penal Law § 130.20[2], Sexual Abuse in the Third Degree, in violation of New York Penal Law § 130.55, Burglary in the Second Degree, in violation of New York Penal Law § 140.25[2], Robbery in the Third Degree, in violation of New York Penal Law § 160.05, Criminal Trespass in the Second Degree, in violation of New York Penal Law § 140.15, Grand Larceny in the Fourth Degree, in violation of New York Penal Law § 155.30[5], Petit Larceny, in violation of New York Penal Law § 155.25, and Harassment in the Second Degree, in violation of New York Penal Law § 160.05. (Henry Aff.[3] ¶ 5).

### B. The Trial

The trial commenced before the Honorable Joel M. Goldberg, Supreme Court, Kings County, on October 25, 2010. On November 5, 2010, the jury returned a verdict of guilty on two counts of Criminal Sexual Act in the First Degree, one count of Burglary in the Second Degree, and one count of Petit Larceny. (Id. ¶ 6). On November 29, 2010, the court sentenced petitioner to concurrent prison terms of 22 years for each Criminal Sexual Act conviction, 15 years for the Burglary conviction, and one year for the Petit Larceny conviction. (Id. ¶ 7). Petitioner was also sentenced to 10 years of post-release supervision for the Criminal Sexual Act convictions and five years post-release supervision for the Burglary conviction. (Id.).

### C. The Direct Appeal

In March 2013, petitioner filed a direct appeal from the judgment of conviction through his attorney, Lynn W. L. Fahey. (Appeal Br.[4] at 2). Petitioner claimed that: 1) by allowing

---

[3] Citations to "Henry Aff." refer to the Affidavit of Claibourne Henry in Opposition to Petition for Writ of Habeas Corpus, dated October 19, 2015, ECF. No. 5.

[4] Citations to "Appeal Br." refer to the Brief for Defendant-Appellant, dated May 2013,

prospective jurors to opt out of serving on the jury without any questioning of the individual jurors, the court abdicated its function and violated petitioner's right to a jury selected from all competent prospective jurors; 2) he was denied due process of law and a fair trial because of the prosecutor's inappropriate summation arguments; 3) in the alternative, petitioner's defense counsel was ineffective for failing to specifically object to the prosecutor's prejudicial summation; and 4) sentencing petitioner to 22 years in prison was excessive given petitioner's lack of a prior criminal record. (Henry Aff. ¶ 8; Appeal Br. at 21, 33, 38, 39).

On February 26, 2014, the Appellate Division, Second Department, unanimously affirmed the trial court's judgment. People v. Bridges, 114 A.D.3d 960, 980 N.Y.S.2d 820 (2d Dep't 2014). The Appellate Division held that petitioner's contention regarding the inadequate jury selection was "unpreserved for appellate review, and, in any event, without merit." Id. The Appellate Division also found petitioner's claim about the prosecution's summation was unpreserved for appellate review, and "[i]n any event, the challenged remarks were fair comment on the evidence and the reasonable inferences to be drawn therefrom or responsive to defense counsel's summation." Id. (citations omitted). The court further held that defense counsel's failure to object to the prosecution's summation did not deprive the petitioner of effective assistance of counsel. Id. (citations omitted). Finally, the court found that the "sentence imposed was not excessive." Id. (citation omitted).

On May 12, 2014, petitioner's application to appeal to the Court of Appeals was denied. People v. Bridges, 23 N.Y.3d 961, 11 N.E.3d 718, 988 N.Y.S.2d 568 (2014).

D. The Habeas Corpus Petition

On August 6, 2015, petitioner, proceeding pro se, filed a Petition for writ of habeas

_____

and labeled Respondent's Exhibit B, ECF No. 5.

corpus in this Court. (Pet.). The Petition raised three claims: 1) that by allowing prospective jurors to opt out of the jury pool without individually questioning the jurors, the court abdicated its judicial function and violated petitioner's right to a jury selected from all competent prospective jurors; 2) that petitioner was denied due process of law and a fair trial because of the prosecutor's persistent summation arguments;[5] and 3) that a prison sentence of 22 years was excessive due to petitioner's lack of criminal record. (Id. at 3). All three claims raised in petitioner's habeas Petition were previously raised in his brief before the Appellate Division on direct appeal, and were thus exhausted at the time the Petition was filed.

    E.  Telephone Conference

On July 10, 2019, the Court held a telephone conference in this case. Petitioner appeared on his own behalf, and Assistant District Attorney Jordan Cerruti from the Kings County District Attorney's Office appeared for respondent. During the conference, petitioner reiterated his argument that the prosecution made unfair remarks about him lying to the jury and tailoring his testimony. Moreover, he argued that his sentence was a miscarriage of justice due to his age and lack of criminal record. The arguments that petitioner raised during the telephone conference are addressed in more detail below.[6]

---

[5] The Court notes that even though petitioner raised a claim of ineffective assistance of counsel in state court based on his attorney's alleged failure to object to the prosecutor's summation remarks, that claim was not raised in his initial habeas Petition. (See discussion infra at 19-21).

[6] During the telephone conference, petitioner also asserted a claim of actual innocence regarding his convictions. This claim was not raised in his papers or in state court, and petitioner provided no evidence demonstrating his innocence. See Schlup v. Delo, 513 U.S. 298, 316 (1995) (stating that the petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial").

8

## DISCUSSION

A.  Timeliness of Petition

This <u>habeas</u> Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132,110 Stat. 1214 (codified as amended in scattered sections of the United States Code), which provides that a "1-year period of limitation shall apply to an application for a writ of <u>habeas corpus</u> by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).  This limitation, absent certain exceptions that do not apply to this case, runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  A conviction is deemed final for AEDPA purposes when the defendant's time to seek certiorari before the United States Supreme Court has expired.  See <u>Williams v. Artuz</u>, 237 F.3d 147, 151 (2d Cir. 2001).[7]  Moreover, any "time during which a properly filed application for State post-conviction or other collateral review . . . is pending" is excluded from the calculation of the statute of limitations period.  28 U.S.C. § 2244(d)(2).

Petitioner's direct appeal to the Appellate Division was denied on February 26, 2014 (<u>see</u> Henry Aff. ¶ 9 (citing <u>People v. Bridges</u>, 114 A.D.3d at 960, 980 N.Y.S.2d at 820)), and petitioner's application for leave to appeal to the Court of Appeals was denied on May 12, 2014.  (See <u>id.</u> ¶ 11 (citing <u>People v. Bridges</u>, 23 N.Y.3d at 961, 988 N.Y.S.2d at 568)).  Under Rule 13 of the Rules of the Supreme Court of the United States, petitioner's conviction became final 90 days after petitioner's motion for leave to appeal to the Court of Appeals was denied, on August 10, 2014.[8]

---

[7] If the defendant files a petition with the United States Supreme Court, the conviction is final when certiorari proceedings have concluded.  <u>Williams v. Artuz</u>, 237 F.3d at 151.

[8] A petition for a writ of certiorari is timely filed within 90 days after entry of judgment of

Thus, the statute of limitations applicable to petitioner's <u>habeas</u> Petition would have expired on August 10, 2015, one year after the period for petitioner to seek Supreme Court review expired. Petitioner filed his <u>habeas</u> Petition on August 6, 2015,[9] and therefore his Petition was timely filed before this Court.

B. <u>AEDPA Standards</u>

Under 28 U.S.C. § 2254, as amended by AEDPA, the authority of federal courts to grant writs of <u>habeas</u> <u>corpus</u> on the merits of claims filed by state prisoners is limited to instances in which it can be shown that the adjudication of a claim on the merits in state court: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In <u>Williams v. Taylor</u>, the Supreme Court indicated that the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. 529 U.S. 362, 404-05 (2000). Under the first prong, a state court decision is considered to be "contrary to" clearly established federal law where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or where the state court "confronts a set of facts that are materially indistinguishable" from those considered by the Supreme Court, but "nevertheless arrives at a result different from [Supreme Court] precedent." <u>Id.</u> at 405-06; <u>accord</u> <u>Evans v. Fischer</u>, 712 F.3d 125, 132-33 (2d Cir. 2013); <u>King v. Greiner</u>, 453 F. App'x 88,

---

a state court of last resort or a United States court of appeals. Sup. Ct. R. 13. Petitioner did not seek such relief.

[9] Based on the date stamped on the petition and entered on the docket sheet, petitioner filed his <u>pro</u> <u>se</u> application on August 6, 2015. Thus, the statement in paragraph 12 of the Henry Affidavit that the Petition was filed on March 25, 2015 appears to be incorrect.

89 (2d Cir. 2011). The precedent providing guidance in this analysis are "the holdings, as opposed to . . . dicta" of the Supreme Court's decisions at the time of the state court decision. Contreras v. Artus, 778 F.3d 97, 110 (2d Cir. 2015) (quoting Williams v. Taylor, 529 U.S. at 412).

Under the "unreasonable application" prong of Section 2254(d)(1), a state court decision will be set aside if it involves an "unreasonable application" of the correct governing legal rule to the particular facts of the case, see Williams v. Taylor, 529 U.S. at 407, 409; King v. Greiner, 453 F. App'x at 89; Evans v. Fischer, 712 F.3d at 133, or if the decision "refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." Emmons v. Artus, 494 F. App'x 127, 128 (2d Cir. 2012) (quoting Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006)). In conducting this analysis, the appropriate inquiry is whether the decision was objectively unreasonable, not merely whether it was incorrect or erroneous. Williams v. Taylor, 529 U.S. at 409-11.

The Supreme Court has made it clear that review under Section 2254(d) is extremely narrow. The Court has stated that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" Woods v. Donald, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)). A habeas court must first determine the theories that formed the basis of the state court's decision, then ask whether "fair minded jurists could disagree" that those theories were inconsistent with a prior Supreme Court decision. Harrington v. Richter, 562 U.S. at 101. A habeas petitioner must show that the state court's ruling was "so lacking in justification" that there was an error in existing law that is "beyond any possibility for

11

fair minded disagreement." Id. at 103. This standard is intentionally difficult to meet.[10] Id. at 102.

Under AEDPA, a state court's determination of a factual issue is "presumed to be correct," 28 U.S.C. § 2254(e)(1); Sarcina v. Artus, 452 F. App'x 44, 46 (2d Cir. 2011), and the petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Moreover, "a decision adjudicated on the merits in a state court and based on a *factual* determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)) (emphasis added).

C. Exhaustion of Petitioner's Claims

Before considering the merits of each of petitioner's claims, this Court must first determine if petitioner has exhausted all available state remedies and whether federal habeas review is permissible.

A federal court may not grant a petition for a writ of habeas corpus unless a petitioner has exhausted all available state court remedies. See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Richardson v. Superintendent of Mid-Orange Corr. Facility, 621 F.3d 196, 201 (2d Cir. 2010); Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001); Vittor v. New York State Dep't of Corr. and Cmty. Supervision, No. 13 CV 3112, 2014 WL 1922835, at *3 (E.D.N.Y. May 14, 2014). This rule, based on principles of comity between state and federal courts, requires that the state have the

---

[10] See Cameron v. Smith, No. 11 CV 5100, 2011 WL 6708790 at *3 (E.D.N.Y. Dec. 21, 2011) (holding that "[t]his standard . . . is arguably the narrowest standard of judicial review in the law").

first opportunity to address and correct alleged violations of a state prisoner's federal rights. Coleman v. Thompson, 501 U.S. 722, 731 (1991); accord Picard v. Connor, 404 U.S. at 275-76. "To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'" Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) (quoting Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990)), cert. denied, 115 S. Ct. 1436 (1995)). "'In order to have fairly presented his federal claim to the state courts[,] the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Rush v. Lempke, 500 F. App'x 12, 14 (2d Cir. 2012) (quoting Daye v. Attorney Gen. of State of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).

A habeas petitioner satisfies the exhaustion requirement if he has presented his claim to the appropriate state courts in accordance with state procedural requirements and has thereby "afford[ed] the state courts a meaningful opportunity to consider [the] allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986) (citations omitted). Although some courts have insisted upon citation in the state pleadings to a specific clause of the Federal Constitution that is alleged to have been violated, courts in this Circuit have held that a claim may be "fairly present[ed] to the state courts . . . without citing chapter and verse of the Constitution" if there is: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis [in factually similar circumstances], (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Dave v. Attorney Gen. of State of New York, 696 F.2d at 194; accord Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011), cert. denied, 565 U.S. 888 (2011); Jones v. Vacco, 126 F.3d 408, 413-14 (2d Cir. 1997) (holding that "[c]it[ation] to a specific constitutional provision or

rel[iance] on federal constitutional precedents alerts state courts of the nature of the claim");

Williams v. Lord, 996 F.2d 1481, 1483 (2d Cir. 1993) (holding that petitioner had fully presented

her claim to the state court where, "[a]lthough she did not cite specific constitutional provisions

in her [state court] brief[,] . . . she explicitly asserted her constitutional right to present a defense

. . . [and] cited a leading Supreme Court case in this area"), cert. denied, 510 U.S. 1120 (1994).

The legal claims raised in the state courts must also be the "substantial equivalent" of the

claims raised in the federal petition.  See Picard v. Connor, 404 U.S. at 278; accord Jones v.

Murphy, 694 F.3d 225, 247 (2d Cir. 2012); Waterhouse v. Rodriguez, 848 F.2d 375, 381 (2d Cir.

1988) (noting that "[t]he legal theory relied upon in the federal court need not . . . be identical to

the legal theory presented to the state courts, provided that the essential factual allegations and

the ultimate constitutional question raised in the federal petition were presented to the state

courts").  Once a federal claim has been properly presented to the state courts, the claim is

considered exhausted even if the state court did not address the claim on the merits and instead

rejected it on a state procedural ground, or did not rule on the claim on either substantive or

procedural grounds, but nonetheless had a fair opportunity to address the claim.  See, e.g.,

Coleman v. Thompson, 501 U.S. at 731-32.

When Mr. Bridges' habeas Petition was filed in August 2015, it contained three claims,

all of which had been raised in his direct appeal to the Appellate Division and which were

addressed by that court.  Thus, all three claims have been exhausted.

D.  Procedural Default

As a separate and distinct issue, the Court must also address whether there was a

procedural default with respect to any of the claims in the state proceedings.  Engle v. Isaac, 456

U.S. 107, 129 (1982); Francis v. Henderson, 425 U.S. 536, 542 (1976).  "A defendant whose

claim is rejected in state court for failure to comply with a state procedural rule may be precluded from raising that claim on <u>habeas</u> review in federal court." <u>Petronio v. Walsh</u>, 736 F. Supp. 2d 640, 652 (E.D.N.Y. 2010) (citing <u>Coleman v. Thompson</u>, 501 U.S. at 729-30; <u>Garcia v. Lewis</u>, 188 F.3d 71, 79 (2d Cir. 1999)). Thus, even if a petitioner raises a colorable federal claim, <u>habeas</u> review is barred if the claim was rejected in the state court on a procedural ground that is both "'independent' of the merits of the federal claim" and provides an "'adequate' basis for the court's decision." <u>Id.</u> (quoting <u>Fernandez v. Smith</u>, 558 F. Supp. 2d 480, 489 (S.D.N.Y. 2008)).

Here, the state court found that certain of petitioner's claims were procedurally barred because petitioner did not properly comply with the state's procedural rules. Where the state court relied on a procedural default in rejecting petitioner's claim, this Court has nevertheless examined the merits of the claim, and in each instance found the claims were not only procedurally barred but also without merit. (<u>See</u> discussion <u>infra</u>).

E. <u>Petitioner's Claims</u>

    A.      <u>Ground One – The Inadequacy of the Jury Selection</u>

Petitioner's first claim is that he was denied his right to a fair jury because, by allowing some prospective jurors to opt out at will from serving due to their perceived personal hardship, the court abdicated its judicial function, and thus a jury was not selected from all competent prospective jurors. (Pet. at 7). This claim of an inadequate jury was raised on direct appeal to the Appellate Division, which rejected the claim both procedurally and on the merits, stating petitioner's "contention is unpreserved for appellate review and, in any event, without merit." <u>People v. Bridges</u>, 114 A.D.3d at 960, 980 N.Y.S.2d at 820.

Petitioner takes issue with the initial remarks and instructions of Justice Goldberg in the

jury selection process. The judge stated, "[f]or some of you it may be a real hardship [to serve] because you have some kind of very important family obligation or tickets to travel or something like that, that makes it a hardship for you to be here, I possibly can excuse you . . . But that doesn't mean I am excusing you from jury service . . . just excusing you from this trial." (VD Tr.[11] 34). Petitioner's trial counsel made no objection after these remarks. Petitioner argues that by giving this instruction without individually questioning the jurors about their hardships, the trial judge violated petitioner's state and federal rights to due process. (Pet. at 7; Appeal Br. at 22[12]).

Trial courts retain broad discretion over trial proceedings and voir dire examination of prospective jurors in particular. People v. Vargas, 88 N.Y.2d 363, 377, 668 N.E.2d 879, 885, 645 N.Y.S.2d 759, 765 (1996). It is within a judge's discretion, in order to prevent inordinate interruptions and undue delay in the proceedings, to question all prospective jurors at the opening of voir dire. People v. Boulware, 29 N.Y.2d 135, 140, 272 N.E.2d 538, 540 , 324 N.Y.S.2d 30, 32 (1971). Here, the court did not abdicate its judicial function when it asked jurors one question about any personal hardships prior to formal voir dire questioning, and then dismissed jurors based on the answer to that question. The court excused jurors based on their responses to an individual question, and thus the court did not abdicate its role in the jury selection process. People v. Gonzalez, 68 A.D.3d 627, 627, 890 N.Y.S.2d 323, 323 (1st Dep't 2009).

The preliminary excusal of potential jurors, without questioning by counsel, is not viewed

---

[11] Citations to "VD Tr." refer to the transcript of the voir dire proceedings before the state court, commencing on October 25, 2010, contained within the State Court Record, ECF No. 5.

[12] All of petitioner's arguments regarding this claim are laid out in his Appeal Brief. No new arguments are raised in his Petition or Reply Brief regarding this claim.

as an impairment to petitioner's constitutional right to a trial by jury. People v. Casanova, 62 A.D.3d 88, 92, 875 N.Y.S.2d 31, 34 (1st Dep't 2009). This is especially true since this initial hardship questioning is not considered part of the official trial proceedings at all. See United States v. Greer, 285 F.3d 158, 168 (2d Cir. 2002); United States v. Woodner, 317 F.2d 649, 651 (2d Cir. 1963). Petitioner has failed to show that the Appellate Division's decision on the merits of this claim runs contrary to any Supreme Court precedent that addresses sua sponte dismissing prospective jurors with a perceived hardship.

Additionally, this claim was unpreserved for appellate review because trial counsel failed to object when the court dismissed the jurors based on perceived hardship. See CPL § 470.05 [2]; People v. Casanova, 62 A.D.3d at 90-91, 875 N.Y.S.2d at 33. New York state courts have consistently applied the contemporaneous objection rule to situations involving the dismissal of prospective jurors. Wynder v. Smith, No. 09 CV 4541, 2011 WL 70556, at *9 (S.D.N.Y. Jan. 10, 2011) (citing People v. Hopkins, 76 N.Y.2d 872, 561 N.E.2d 882, 560 N.Y.S.2d 982 (1990); People v. Gonzalez, 68 A.D.3d 627, 890 N.Y.S.2d 323 (1st Dep't 2009)). Trial counsel's failure to promptly object to the dismissal of the jurors created a procedural bar for appellate and habeas review of this claim.

Accordingly, it is respectfully recommended that petitioner's first claim for habeas relief be denied as the Court finds that habeas review is barred by the Appellate Division's determination that petitioner's claim of inadequate jury selection was procedurally barred. Moreover, the Court finds that the Appellate Division's determination that the claim was without merit was neither contrary to nor involved an unreasonable application of federal law that would warrant habeas relief.

B.    <u>Ground Two – Inappropriate Summation by the Prosecutor</u>

Petitioner's second claim in his petition is that he was denied due process of law and a fair trial due to the prosecutor's persistent summation arguments that petitioner "tailored" his testimony and created his defense after he had heard the prosecution's witnesses.  (Pet. at 9).  This claim of an inappropriate summation by the prosecutor was raised on direct appeal and rejected by the Appellate Division, on both procedural grounds and on the merits, stating that "the challenged remarks were fair comment on the evidence and the reasonable inferences to be drawn therefrom or responsive to defense counsel's summation." <u>People v. Bridges</u>, 114 A.D.3d at 960, 980 N.Y.S.2d at 820 (omitting citations).

Petitioner cites several parts of the prosecution's summation that he claims denied him due process of law and a fair trial.  First, the prosecutor argued that petitioner had invented a consent defense only after he had learned that the DNA evidence presented at trial "foreclosed" any other avenue of defense.  (Tr. at 423).  The prosecutor argued, "[h]e admitted what he couldn't deny, and he denied what he couldn't admit, which was that this was consensual . . . But the DNA puts him there, so he can't say it didn't happen." (<u>Id.</u>)  Second, the prosecutor argued that because petitioner had been present at the trial the whole time, he knew to repeat certain testimony to the jury "to fit what he thinks it should say" based on others' testimony.  (<u>Id.</u> at 437-38).  Third, the prosecutor argued that petitioner had to spin tales to match the complainant's testimony.  (<u>Id.</u> at 447).  The prosecutor argued "he's told his family a story that he has to adhere to, so he will admit what he had to admit, and deny what he must . . . to match her testimony." (<u>Id.</u> at 446-47).

The trial court did instruct the jury on the prosecution's remarks on several occasions.  Before both parties' summations, the court reminded the jury that summations are not evidence.

(Id. at 393). During the prosecutor's summation, defense counsel objected a total of five times. The first time, defense counsel objected to the prosecutor's characterization of the evidence, and the court reminded the jury that it was their "recollection that controls." (Id. at 421-22). The second defense objection followed the prosecutor's argument that the petitioner had tailored his testimony. (Id. at 422-23). The court immediately overruled this objection without explanation or further instruction to the jury. (Id. at 423). The third objection followed the prosecutor's argument that the scene of the crime was not staged. (Id. at 427). Again, the court promptly overruled the defense objection, and explained that this statement was simply "an argument the People are asking you to accept," reminding the jury again that it was up to them whether or not to draw on this inference. (Id. at 428). The fourth objection followed the prosecutor's argument that the petitioner had picked the "perfect victim" since the upstairs neighbor was hard of hearing and since Ciena was no match for him physically. (Id. at 428-29). Again, the court overruled the objection and explained the statement is "an inference the prosecutor is asking you to infer from the evidence." (Id. at 429). The fifth and final objection followed the prosecutor's argument that petitioner tailored his testimony "to fit what he thinks it should say." (Id. at 438). The court immediately instructed the jury that the petitioner "does not have the opportunity to testify until the People complete presenting their case, so you shouldn't draw any conclusions merely because the defendant heard the People's case" before he testified. (Id.)

In reviewing a habeas claim based on prosecutorial misconduct in the context of comments made during summation, the habeas court considers whether the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). As the court in United States v. Rodriguez noted, "It

is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." 968 F.2d 130, 142 (2d Cir. 1992) (quoting <u>Floyd v. Meachum</u>, 907 F.2d 347, 348 (2d Cir. 1990)). In determining if the prosecutor's comments caused substantial prejudice, the court should consider: 1) the severity of the misconduct; 2) whether the court took measures to cure the misstatements; and 3) what the likely effect of the statements were on the outcome of the trial. <u>United States v. Zemlvansky</u>, 908 F.3d 1,16 (2d Cir. 2018) <u>cert. denied</u>, No. 18 CV 7778, 2019 WL 499846 (Mar. 18, 2019) (citing <u>United States v. Banki</u>, 685 F.3d 99, 120 (2d Cir. 2012)).

Mindful that the <u>habeas</u> court is limited under ADEPA to determining only if the state court's decision was either contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts, the Court finds that the state appellate court did not err in finding that the prosecutor's comments were not improper in light of all of the evidence presented at trial. In reviewing this claim on direct appeal, the Appellate Division held that the claim was not preserved for appeal, and "[i]n any event, the challenged remarks were fair comment on the evidence and the reasonable inferences to be drawn therefrom" or they were responsive to petitioner's counsel's summation. <u>People v. Bridges</u>, 114 A.D.3d at 960, 980 N.Y.S.2d at 820. In this petition, there has been no showing that the court's analysis of the prosecutor's comments violated clearly established federal law or even that there was an unreasonable factual determination by the state court based on the evidence.

Moreover, even if the comments were improper, there has been no showing that they caused substantial prejudice to petitioner. Several times, the trial court gave specific instructions that summations were simply arguments and not evidence. (Tr. at 393, 422, 428, 429). The law presumes that the jury followed this instruction. <u>See</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 234, 120

S. Ct. 727, 733, 145 L. Ed. 2d 727, 738 (2000); United States v. Aquart, 912 F.3d 1, 34 (2d Cir. 2018). Here, the court took steps to cure whatever harm might have occurred from the prosecutor's remarks by giving this initial instruction and subsequent instructions following most of defense counsel's objections. See United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999). Additionally, the core of defense counsel's summation was about the various inconsistencies in Ciena's testimony. (Tr. at 395, 396, 398, 403, 408). The prosecutor's summation remarks were directly responsive to defense counsel's arguments about those inconsistencies. (Id. at 421, 431, 434, 442, 445). In light of the evidence in support of petitioner's guilt, petitioner has failed to demonstrate that these statements significantly impacted the outcome of the trial.

Accordingly, based on the review of the record, the Court respectfully recommends that petitioner's second claim for habeas relief be denied, as the Court finds the Appellate Division's determination that petitioner's claim of inappropriate summation by the prosecution was without merit was neither contrary to nor involved an unreasonable application of federal law that would warrant habeas relief.

C.    Ground Three – Alternatively, Ineffective Assistance of Trial Counsel

Alternatively, petitioner claims that his trial counsel was ineffective for failing to specifically object to the prosecutor's prejudicial summation remarks. (Appeal Br. at 38 n.12). This claim of ineffective assistance of trial counsel was raised on direct appeal before the Appellate Division, which rejected the claim on the merits without further discussion. People v. Bridges, 114 A.D.3d at 960, 980 N.Y.S.2d at 820. However, this claim of ineffective assistance of counsel was not raised in petitioner's initial habeas petition. Petitioner did raise this claim in his Reply to respondent's affidavit and memorandum of law in opposition to his habeas petition.

(Reply[13] at 11-13).  In the interest of deciding all of petitioner's potential claims on the merits, the Court will proceed to evaluate this claim.  To the extent that petitioner argues that trial counsel failed to object to certain statements made by the prosecution in summation, a review of the record supports the reasonableness of the Appellate Division's determination that this did not rise to the level of ineffective representation.

Where a defendant has made a claim that he received ineffective assistance of counsel, he must show that counsel's performance "fell below an objective standard of reasonableness" and that there is a reasonable probability that absent this error in performance, the outcome of the trial would have been different.  Strickland v. Washington, 466 U.S. 668 (1984); Gonzalez v. United States, 337 F. Supp. 2d 419, 423 (E.D.N.Y. 2004) (citing United States v. Leslie, 103 F.3d 1093, 1099 (2d Cir.), cert. denied, 520 U.S. 1220 (1997)).  To establish a claim of ineffective assistance of trial counsel, a petitioner must prove:  (1) that counsel's performance was deficient in that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that this deficient performance prejudiced the defense in that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687.  "[T]he burden rests on the accused to demonstrate a constitutional violation."  Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)).

Prior to the passage of AEDPA, habeas review of a claim of ineffective assistance of counsel required courts to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  James v. Coughlin, 22 F.3d

---

[13] Citations to "Reply" refer to the Reply to Respondent's Affidavit and Memorandum of Law in Opposition, dated November 12, 2015, ECF. No. 6.

427, 429 (2d Cir. 1994) (quotations and citations omitted). Under AEDPA, a <u>habeas</u> court reviewing the decision of a state appellate court that has denied a claim of ineffective assistance of counsel must deny an application for a writ of <u>habeas corpus</u> unless the adjudication of the state law claim "involved an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Under AEDPA, "the <u>Strickland</u> standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Aparicio v. Artuz</u>, 269 F.3d at 95 & n.8 (quoting 28 U.S.C. § 2254(d)(1)). However, for purposes of AEDPA, a petitioner need not demonstrate that his particular theory of ineffective assistance of counsel is itself also "clearly established." <u>Id.</u> at 95 n.8. Rather, for a petitioner to succeed under Section 2254(d)(1), he must show that the state court applied <u>Strickland</u> to the facts of his case in an "objectively unreasonable manner." <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003).

Before examining the specific claim, the Court notes that in evaluating claims of ineffective assistance of counsel, the New York Court of Appeals noted in <u>People v. Baldi</u>, 54 N.Y.2d 137, 146-47, 429 N.E.2d 400, 405, 444 N.Y.S.2d 893, 898 (1981), that the court must "avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. It is always easy with the advantage of hindsight to point out where trial counsel went awry in strategy."

Here, petitioner claims that his trial counsel was ineffective for failing to specifically object to the prosecutor's prejudicial summation remarks. (Appeal Br. at 38 n.12). Petitioner argues that the prosecutor made several comments that were objectionable. First, petitioner complains about the prosecutor's remarks that petitioner tailored his testimony "just enough so

that it matched in the parts that it needed to match." (Tr. at 423). Trial counsel specifically objected to this argument at the time of the summation. (Id.)  Second, petitioner complains about the prosecutor's remarks about the petitioner "being there [at the trial] the whole time," so petitioner "knew to repeat [testimony he had heard]." (Id. at 437).  Again, trial counsel specifically objected to this argument at the time of the summation, and the court gave an instruction to the jury not to "draw any conclusions merely because the defendant heard the People's case." (Id. at 438).  Because trial counsel did in fact object to the prosecutor's summation remarks in these instances, there is no basis for an ineffective assistance of counsel claim on those grounds.

Finally, petitioner complains about the prosecutor's remarks suggesting that petitioner "told his family a story that he has to adhere to, so he will admit what he had to admit, and deny what he must" to explain why the DNA evidence matched him. (Id. at 446).  Although trial counsel did not object to this particular part of the prosecution's summation, such a decision not to object to this specific comment does not rise to the level of ineffective assistance required by Strickland, and alone is not a basis for concluding that petitioner received ineffective representation. See United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (holding that the failure to object to a prosecution's proper summation did not constitute ineffective assistance of counsel); Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986) (finding that because the prosecutor's summation was appropriate, the defendant's counsel's failure to object did not support the conclusion that his performance fell below the "reasonably competent" standard of Strickland).  Moreover, as noted, most of the summation remarks that petitioner complains of were in fact objected to by defense counsel at the trial.

Accordingly, based on the review of the record, the Court finds the Appellate

Division's determination that petitioner's claim of ineffective assistance of trial counsel was without merit was neither contrary to nor involved an unreasonable application of federal law that would warrant habeas relief.

D.    Ground Four – Excessive Sentence

Petitioner's final claim is that his sentence is excessive. (Pet. at 12). In challenging his sentence, petitioner cites his youth, lack of criminal record, academic success, and family support as evidence that his sentence was excessive. (Id.). The mandatory minimum sentence for the charges on which petitioner was convicted is five years and the maximum is 65 years. (Sen. Tr.[14] at 9). Petitioner received a concurrent sentence of 22 years on the criminal sexual act counts, 15 years on the burglary count, and one year on the petit larceny count. (Id. at 11). Justice Goldberg reduced the prosecution's request for a 40-year sentence because the case did not involve multiple victims and it was an isolated incident. (Id. at 9).

The 22-year sentence imposed on the criminal sexual act counts is less than the maximum of 25 years. See N.Y. Penal L. § 70.80(4)(a)(i). The 15-year sentence imposed on the burglary count is the maximum permitted under New York Penal Law. See N.Y. Penal L. § 70.00(2) (c). The one-year sentence imposed on the petit larceny count is the maximum permitted under New York Penal Law. See N.Y. Penal L. § 70.15(1) (a).

Petitioner challenged his sentence in his brief on direct appeal, where he argued that as a first-time offender, his sentence was excessive. (Appeal Br. at 39-43). Lynn Fahey, his attorney on appeal, argued for leniency, citing his youth, lack of criminal history, academic success, and strong family and community support. (Id.) Fahey also argued that the court should review a

---

[14] Citations to "Sen. Tr." refer to the transcript of the sentencing proceedings before the state court, commencing on November 29, 2010, contained within the State Court Record, ECF No. 5.

sentencing record in light of the goals of the penal system, which include rehabilitation, deterrence, retribution, and isolation.  (Appeal Br. at 39-40 (citing People v. Notey, 72 A.D.2d 279, 284 (2d Dep't 1980))).  The Appellate Division rejected petitioner's sentencing claim on the merits without discussion.  People v. Bridges, 114 A.D.3d at 960, 980 N.Y.S.2d at 820.  In his Reply to respondent's affidavit and memorandum of law in opposition to his initial habeas petition, petitioner also argues that the Eighth Amendment to the United States Constitution "forbids grossly disproportionate sentences and those that are cruelly excessive," and a modification to his sentence is warranted in the interest of justice.  (Reply at 22-23).

Since matters relating to sentencing are governed by state law and not cognizable in a habeas corpus proceeding, see Glucksman v. Birns, 398 F. Supp. 1343, 1352 (S.D.N.Y. 1975), and since the sentence was within the statutory range prescribed by state law, "no federal constitutional issue is presented," White v. Keane, 969 F.2d 1381, 1383-84 (2d Cir. 1992), and petitioner's claim regarding his sentence is not a ground for this Court to grant habeas relief.  See also Hyatt v. Bellnier, No. 09 CV 6594, 2009 WL 3423359, at *14 (S.D.N.Y. Oct. 23, 2009) (holding that "[a]n excessive sentence claim does not provide a basis for habeas relief").  Additionally, there is no Supreme Court case that has ever found a sentence to be in violation of the Eighth Amendment merely because of its length.  Carmona v. Ward, 576 F.2d 405, 408 (2d Cir. 1978).  Thus, the Court respectfully recommends that the court find that petitioner's claim of an excessive sentence is not grounds upon which to grant habeas relief.

<u>CONCLUSION</u>

In light of the above, it is respectfully recommended that the Petition for a writ of habeas corpus be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onandaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 26, 2019

                                    /s/  Cheryl Pollak

                                    Cheryl L. Pollak
                                    United States Magistrate Judge
                                    Eastern District of New York